United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 13, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-20878

_____

PEDCOR MANAGEMENT COMPANY, INC.
WELFARE BENEFIT PLAN,

Appellant,

versus

NATIONS PERSONNEL OF TEXAS, INC.; HUMAN RESOURCE SOLUTIONS INC., a
corporation; EMPLOYEE WELFARE BENEFIT PLAN OF HUMAN RESOURCE
SOLUTIONS INC.; COMPREHENSIVE EMPLOYEE SOLUTIONS; EMPLOYEE WELFARE
BENEFIT PLAN OF COMPREHENSIVE EMPLOYEE SOLUTIONS; TOTAL LEASING
CO., a corporation; EMPLOYEE WELFARE BENEFIT PLAN OF TOTAL LEASING
CO.; ROCK CITY MECHANICAL INC.; EMPLOYEE WELFARE BENEFIT PLAN OF
ROCK CITY MECHANICAL INC.; BUREAU OF WHOLESALE SALES
REPRESENTATIVES INC.; EMPLOYEE WELFARE BENEFIT PLAN OF CONNELLY
MANAGEMENT INC.; CONNELLY MANAGEMENT EMPLOYEE PLAN; FAMILY EXPRESS
CORP.; CONTINENTAL DESIGN & ENGINEERING INC.; CONTINENTAL
INTERNATIONAL INC.; R & R MACHINE & ENGINEERING INC.; MID-CITY
OFFICE SYSTEMS INC.; BROCKTON COMPANIES LP,

Plaintiffs-Appellees.

versus

NORTH AMERICAN INDEMNITY, NV, a corporation of Belgium,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before WIENER, CLEMENT and PRADO, Circuit Judges.

WIENER, Circuit Judge:

Appellant Pedcor Management Company, Inc. Employee Welfare

Benefit Plan ("Pedcor") challenges the district court's class

certification order for arbitration of claims brought by

Plaintiffs-Appellees Employer Self-Funded ERISA Plans ("Plans") against Defendant-Appellee North American Indemnity, NV ("NAI"). For the following reasons, we vacate and remand.

## I. FACTS AND PROCEEDINGS

NAI is a Belgian-incorporated insurance company that entered into reinsurance contracts with 408 Plans throughout the United States. The arbitration agreement of each of these contracts requires, in relevant part, that (1) "any dispute between the parties hereto in connection with the Agreement" be submitted to arbitration; (2) as a general matter each party chooses one arbitrator, and the two chosen arbitrators then select a third to constitute a panel; and (3) "[a]rbitration shall be governed by the laws of the State of Texas." There is no express provision in the clause regarding consolidation or class treatment of claims in arbitration.

This dispute arose when NAI allegedly breached its reinsurance contracts with the Plans by defaulting on payment of claims. NAI originally sued American Heartland Health Administrators ("AHHA"), the third party administrator of the Plans, for negligent underwriting of the Plans. Several individual Plans then successfully intervened as plaintiffs against NAI.

The district court denied NAI's motion to dismiss its action without prejudice and entered a take-nothing judgment in NAI's

2

original suit against AHHA.[1]  The court subsequently held a hearing to discuss with the intervening Plans the possibility of certifying a class for arbitration proceedings against NAI.  Pedcor's counsel, who had been granted leave to appear as amicus curiae in the proceedings, participated in the hearing and filed written suggestions advising against class certification.  In preparation for arbitration, the court nevertheless certified a class "to consist of all employer plans that bought reinsurance through North American Indemnity, N.V., after January 1, [2000], whose claims have not been paid."[2]  Pedcor timely appealed the certification order.

## II. ANALYSIS

A.  **Standard of Review**

As a general matter, we "will reverse a district court's decision to certify a class only upon a showing that the court abused its discretion, or that it applied incorrect legal standards in reaching its decision."[3]  Thus, the certification order itself is reviewed for abuse of discretion, but whether the district court

---

[1] NAI filed no opposition to the class certification motion, but did commence litigation in Belgium allegedly on the same matters.

[2] The original order lists the date of January 1, 2002, but that was corrected later to be 2000.  The district court also stated that "[a]s soon as the class is certified and the periods have expired I will then compel arbitration."

[3] James v. City of Dallas, 254 F.3d 551, 562 (5th Cir. 2001) (quoting Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 624 (5th Cir. 1999)).

applied the correct legal standards is a question of law that we review de novo.[4]  In this case, the questions whether the district court applied the correct legal standards or abused its discretion are pretermitted by recent Supreme Court precedent.

B.    **Effect of *Greentree Financial Corporation v. Bazzle***

In Green Tree Financial Corporation v. Bazzle,[5] which was issued subsequent to the certification order and to the parties' initial briefing in this court, the Supreme Court addressed a state court's decision ordering class arbitration under state law in the context of an arbitration agreement that was silent about whether class arbitration was forbidden or allowed.[6]  After concluding that the agreement did not expressly forbid class arbitration, a plurality of the Court held that "[u]nder the terms of the parties' contracts, the question —— whether the agreement forbids class arbitration —— is for the arbitrator to decide."[7]

It is well established that when we are confronted with a plurality opinion, we "look to 'that position taken by those Members who concurred in the judgments on the narrowest grounds.'"[8]

---

[4] Id.

[5] __ U.S. __, 123 S.Ct. 2402 (2003).

[6] 123 S.Ct. at 2404 (citing Bazzle v. Green Tree Financial Corp., 351 S.C. 244, 569 S.E.2d 349 (2002)).

[7] Id. at 2407.

[8] Campbell v. St. Tammany Parish Sch. Bd., 64 F.3d 184, 189 (5th Cir. 1995) (quoting Marks v. United States, 430 U.S. 188, 193 (1977).

4

In Green Tree, Justice Stevens, whose concurrence in judgment constituted the fifth vote, dissented to the extent that he would have permitted the state court decision allowing class arbitration to stand. He reasoned that the decision was correct as a matter of law, i.e., nothing in the court's application of state law to allow class arbitration violated the FAA, and he emphasized that the petitioner challenged only the merits of that decision, not whether it was made by the right decision-maker.[9] Nevertheless, Justice Stevens also stated that (1) "[a]rguably the interpretation of the parties' agreement should have been made in the first instance by the arbitrator, rather than the court," and (2) "because Justice BREYER's opinion expresses a view of the case close to my own, I concur in the judgment."[10]

The basis on which Justice Stevens would have decided the case — that the state court judgment was correct as a matter of law — fails to constitute the most narrow grounds on which the case was decided. The four-member plurality specifically rejected the legal interpretation of the state court because it was a decision by the wrong decision-maker. The grounds of the Stevens concurrence also differed from the three-member dissent which would have upheld the state court's ability to make the decision but would have reversed

---

[9] Green Tree, 123 S.Ct. at 2408 (Stevens, J., concurring in judgment and dissenting in part).

[10] Id. at 2408-09.

5

on the merits of that court's decision to allow class arbitration.[11] Justice Stevens did express his agreement, however, with the principle laid down by the plurality that arbitrators should be the first ones to interpret the parties' agreement. As a result, the plurality's governing rationale in conjunction with Justice Stevens's support of that rationale substantially guides our consideration of this dispute.

In arriving at its decision, the plurality relied on two considerations. First, it found that the contract's provision to submit to arbitration "<u>all</u> disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract" reflected the parties' intent to commit a broad scope of questions to arbitration, including the class arbitration question because that issue "relat[ed] to the contract."[12] Second, the plurality reasoned that there exists only a narrow exception for certain gateway matters that parties normally expect a court rather than an arbitrator to decide, which include (1) "whether the parties have a valid arbitration agreement at all" and (2) "whether a concededly binding arbitration clause

---

[11] <u>Id.</u> at 2409 (Rehnquist, C.J. dissenting, joined by O'Connor, J. and Kennedy, J.). Justice Thomas dissented separately based on his belief that the FAA does not apply to proceedings in state courts. <u>Id.</u> at 2411 (Thomas, J., dissenting).

[12] <u>Id.</u> at 2407 (emphasis in original).

applies to a certain type of controversy."[13] As the question whether a contract forbids class arbitration concerns the "<u>kind of arbitration proceeding</u> the parties agreed to," and not "the validity of the arbitration clause []or its applicability to the underlying dispute between the parties," the plurality concluded that arbitrators are "well situated to answer that question."[14] In sum, because the scope of the arbitration agreement itself was broad, and the issue there concerned only the kind of arbitration proceeding agreed to, the plurality, plus Justice Stevens, i.e., the Court, held that "this matter of contract interpretation should be for the arbitrator, not the courts, to decide."[15]

The clarity of <u>Green Tree</u>'s holding —— that arbitrators are supposed to decide whether an arbitration agreement forbids or allows class arbitration —— leaves us to decide only whether the instant case is sufficiently analogous to <u>Green Tree</u> to come within its rule. That the district court ordered a type of class arbitration here is self-evident.[16] Appellees assert that the district court did not have in mind a traditional class action, but rather a procedure with one arbitration panel and 408 separate arbitration proceedings. This procedure, even if accurately

---

[13] <u>Id.</u>

[14] <u>Id.</u> (emphasis in original).

[15] <u>Id.</u>

[16] The court certified a class of employer plans and intended to compel arbitration.

7

described, does not alter the conclusion that the district court certified a class for arbitration. Furthermore, the arbitration provision states: "In the event of any dispute between the parties hereto in connection with the Agreement, such dispute shall be submitted to arbitration" (emphasis added). As in Green Tree, the scope of questions committed to arbitration in the arbitration provision of the reinsurance contracts is broad, and whether class arbitration is allowed is similarly a dispute "in connection with the Agreement."

Two additional aspects of the Court's holding in Green Tree, which we address out of an abundance of caution, also fail to distinguish it from the instant case. First, although Green Tree held that whether an arbitration agreement forbids class arbitration is a question for the arbitrator to decide, the Court nevertheless made the initial determination that the language of the arbitration agreement did not clearly forbid class arbitration.[17] The Court stated that it "must deal...at the outset" with the argument that the contracts forbid class arbitration, "for if it is right, then the South Carolina court's holding [that the contracts were silent] is flawed on its own terms."[18] This preliminary analysis appears to be in response to the dissent's (and petitioner's) argument to the contrary. But even if the South

---

[17] Id. at 2406.

[18] Id.

8

Carolina court's holding is "flawed on its own terms," it is unclear why the Court would explore this issue in the first place if its ultimate conclusion was that a court, regardless of whether its interpretation of the law is right or wrong, is simply the wrong decision-maker.  That is, if the arbitration provision clearly did forbid class arbitration, then the arbitrators could —— and under <u>Green Tree</u> should —— make this call without any prior analysis by a court.  In short, under the Court's holding, it should not be necessary for a court to decide initially whether an arbitration agreement clearly forbids class arbitration.

Nevertheless, assuming <u>arguendo</u> that we should address this issue, we conclude that the arbitration agreement in this case, as in <u>Green Tree</u>, does not clearly forbid class arbitration.  In <u>Green Tree</u>, the Court concluded that an arbitration clause providing that "disputes 'shall be resolved...by one arbitrator selected by us [Green Tree] with consent of you [Green Tree's customer]'" did not clearly forbid class arbitration.[19]  Here, the arbitration provision states in part:

> As soon as one party demands arbitration and has named an arbitrator, the other party binds itself to name an arbitrator within one (1) month and the two arbitrators shall then within a further period of one (1) month select a third arbitrator.  If either party refuses or neglects to name an arbitrator within the specified period, the requesting party may name an arbitrator for the other party.

Unlike the limited language in <u>Green Tree</u>, which outlines

---

[19] <u>Id.</u> at 2406 (brackets in original) (citation omitted).

relatively simply procedures for the selection of one arbitrator, this provision's contemplation of three-arbitrator panels could be construed as less amenable to class arbitration, at least at first glance. As a logistical matter, it is unclear exactly how a class would organize itself, given the procedures for appointing multiple arbitrators. In light of Green Tree, however, the American Arbitration Association is beginning to provide some assistance in organizing consolidated or class arbitrations. More importantly, despite any potential logistical hurdles, the agreement contains no express provisions regarding the permissibility of class arbitration. In light of such silence, we are satisfied that it "is not completely obvious" whether the agreement forbids arbitration.[20]

The second aspect of Green Tree that potentially differs from this case is the choice-of-law provision of the contracts. In Green Tree the excerpts of the arbitration agreement reproduced in the opinion expressed that the arbitration was to be governed by the FAA,[21] and in the instant case, the arbitration provision states that "[a]rbitration shall be governed by the laws of the State of Texas."[22] This facial difference, however, evaporates when we examine the respective arbitration provisions and relevant law in

---

[20] Id. at 2406.

[21] Id. at 2405.

[22] ROA:1, at 895.

10

more detail. The arbitration agreement in Green Tree is not limited to agreements governed solely by the FAA. Although the Court explicitly took the case to determine whether the South Carolina court's holding was consistent with the FAA,[23] it made no attempt to limit its holding to contracts governed solely by the FAA. In fact, the Court indicated that the question whether the arbitration agreement was silent about class arbitration was "a matter of state law."[24] In his concurrence, moreover, Justice Stevens stated that "[t]he parties agreed that South Carolina law would govern their arbitration agreement."[25] These statements illustrate that the scope of Green Tree's holding is not limited to contracts governed exclusively by the FAA.

Because Green Tree applies to arbitration agreements governed by a hybrid of both the FAA and state law, the instant case would be distinguishable, if at all, only if the arbitration provision at issue here were governed exclusively by state arbitration law. The resolution of this issue depends on how we interpret the parties' selection of the "laws of the State of Texas" as their choice-of-law, and, more specifically, whether that language excludes the applicability of the FAA. In Volt Information Sciences, Inc. v. Stanford University, the Supreme Court held that parties may

---

[23] 123 S.Ct. at 2406.

[24] Id. at 2405.

[25] Id. at 2408 (Stevens, J., concurring in judgment and dissenting in part).

11

"specify by contract the rules under which that arbitration will be conducted," and that "enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA...."[26] Relying on <u>Volt</u>, we have held that, just as parties may select the arbitral <u>rules</u> governing arbitration, they may also "specify the <u>law</u> governing interpretation of the scope of the arbitration clause."[27]

When we heed the parties' selection of the "laws of the State of Texas," our review of these laws demonstrates that this choice-of-law provision encompasses the FAA as well as state-specific law. In <u>L & L Kempwood Associates v. Omega Builders, Inc.</u>, the Texas Supreme Court reiterated that the FAA is part of the substantive law of Texas and held, as a result, that the FAA applies in an arbitration agreement unless the choice-of-law provision "specifically exclude[s] the application of federal law...."[28] As the FAA is part of Texas law, the parties' covenant that "arbitration shall be governed by the laws of the State of Texas," means that this choice-of-law provision includes both the FAA and applicable state law. Furthermore, because this contractual

---

[26] 489 U.S. 468, 479 (1989).

[27] <u>Ford v. NYLCare Health Plans, Inc.</u>, 141 F.3d 243, 248 (5th Cir. 1998) (emphasis added).

[28] 9 S.W.3d 125, 127-128 & n.15 (Tex. 1999) (finding that the contractual phrase "the law of the place where the Project is located" did not specifically exclude the application of federal law even though the contract project was located in Houston).

12

language does not specifically exclude the application of federal law, we conclude that the FAA applies to this agreement as well. The fact that the FAA would presumptively apply to this agreement, as a contract involving interstate commerce,[29] further convinces us of the soundness of the Texas rule that the parties must expressly exclude the applicability of the FAA if they want only state law to apply. In short, the choice-of-law differences between <u>Green Tree</u> and this case are more apparent than real. Because <u>Green Tree</u> applies, at a minimum, to arbitration agreements under the FAA, and because the arbitration provision in this case also incorporates the FAA, the Court's holding is applicable here.[30]

Assuming the concurrent applicability of Texas law, our research has revealed nothing in Texas arbitration law mandating, as a matter of law, that a court rather than an arbitrator determine whether an arbitration agreement forbids class arbitration. Texas arbitration law concerning international commercial disputes, which would appear to apply to this dispute if

---

[29] <u>Volt Information Sciences, Inc. v. Stanford Univ.</u>, 489 U.S. 468, 476 (1989) ("It is undisputed that this contract falls within the coverage of the FAA, since it involves interstate commerce...."). Because the reinsurance contracts at issue involve "[c]itizens of different states engaged in performance of contractual operations in one of those states," it is "a contract involving commerce under the FAA." <u>Del E. Webb Constr. v. Richardson Hosp. Auth.</u>, 823 F.2d 145, 147 (5th Cir. 1987) (citation and internal quotation marks omitted).

[30] Inasmuch as we conclude that the instant arbitration agreement is covered by the FAA, we express no opinion on whether arbitration agreements governed exclusively by state arbitration law would by controlled by the Court's holding in <u>Green Tree</u>.

13

the arbitration should ultimately take place in Texas,[31] does provide for court-ordered <u>consolidation</u> of arbitration proceedings.[32] This provision does not <u>require</u> courts to make this decision, however; it only states permissively that a district court <u>may</u> order consolidation on application of one party <u>with the consent</u> of the other parties.[33] The provision also "does not prevent the parties to two or more arbitrations from agreeing to consolidate...and taking any step necessary to effect that consolidation."[34] In short, this section may not clearly assign consolidation decisions to arbitrators, but neither does it require a court to make such a decision. Furthermore, it is well established that the FAA preempts state laws that contradict the purpose of the FAA by "requir[ing] a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."[35] Thus, even if Texas law contained a rule

---

[31] 4 Tex. Civ. Prac. & Rem. § 172.001(b) (2003). As Pedcor points out, this case involves an international agreement because the places of business of the parties are located in different States - Pedcor is located in Indiana and NAI in Belgium. <u>See</u> 4 Tex. Civ. Prac. & Rem. §§ 172.003(a) & (d). Otherwise, section 172.001 provides that "[t]his chapter applies to international commercial arbitration and conciliation, subject to any agreement that is in force between the United States and another state or states." <u>Id.</u>

[32] 4 Tex. Civ. Prac. & Rem. § 172.173.

[33] 4 Tex. Civ. Prac. & Rem. § 172.173(a).

[34] 4 Tex. Civ. Prac. & Rem. § 172.173(c).

[35] <u>Southland Corp. v. Keating</u>, 465 U.S. 1, 10 (1984).

contrary to <u>Green Tree</u>, i.e., that courts may decide the class arbitration question, the simultaneous applicability of the FAA to this case would appear to preempt any contrary state law.[36]

Finally, we note that <u>Green Tree</u> has effectively overruled our holding in <u>Del E. Webb Construction v. Richardson Hospital Authority</u>, which both parties discussed in relation to a district court's authority to order class arbitration when the agreement is silent.[37] In <u>Del E. Webb</u>, after discussing the Supreme Court's statement that questions on procedural matters are to be decided by the arbitrator because they are usually intertwined with the merits of the underlying dispute, we stated that "[t]he question of consolidation, however, is for the district court because the court

---

[36] In its most recent submission to us, Pedcor asserted that Texas law, specifically the recent Texas appellate court decision of <u>In re John M. O'Quinn,P.C.</u>, actually requires a court, instead of an arbitrator, to decide whether an agreement permits class arbitration. No. 12-02-00352-CV, 2003 WL 21468619 (Tex. Ct. App. June 25, 2003). This case, however, only held that the court had to decide the class arbitration issue because the parties chose the AAA Commercial Arbitration Rules to apply. <u>Id.</u> at *5. At the time, these rules required a trial court to certify a class first because the AAA had no procedure for class arbitration. <u>Id.</u> Although the court indicated that <u>Green Tree</u> was inapplicable, the court also stated that its holding was "limited to the particular facts of [the] case" and that it was "not address[ing] whether, as a general proposition, class certification is a matter for the trial court or for the arbitrator." <u>Id.</u> at *4, n. 1. Furthermore, in light of <u>Green Tree</u>, the AAA has stated that it will administer demands for class arbitration in particular circumstances, and is developing rules to accommodate these types of cases. <u>See</u> American Arbitration Association: Policy on Class Arbitration, <u>available at</u> http://www.adr.org/index2.1.jsp?JSPssid=15778&JSPsrcupload\LIVESITE\Rules_Procedures\Topics_Interest\AAA%20Class%20Action%20policy.htm (July 11, 2003).

[37] 823 F.2d 145.

15

must determine only whether the contract provides for consolidated arbitration, a question free of underlying facts."[38]  As a result, we agreed with the Second and Ninth circuits that "district courts should decide the issue [of consolidation]."[39]  To the extent that the issue of consolidation in arbitration is analogous to class arbitration, <u>Green Tree</u>'s holding that arbitrators, not courts, decide whether an agreement provides for class arbitration would appear to overrule <u>Del E. Webb</u>'s holding to the contrary.

As we hold today that, pursuant to <u>Green Tree</u>, arbitrators should decide whether class arbitration is available or forbidden, we do not address the parties' other arguments on appeal, most of which depended on the now-flawed premise that a district court maintains the initial authority to order class arbitration.

### III. CONCLUSION

For the foregoing reasons, we vacate the certification order, and remand to the district court for proceedings consistent with this opinion.

VACATED AND REMANDED.

---

[38] <u>Id.</u> at 150.

[39] <u>Id.</u> at 149-50.