### CONNELLY MANAGEMENT, INC. EMPLOYEE WELFARE BENEFIT PLAN, et al., Plaintiffs,

### v.

### NORTH AMERICAN INDEMNITY, N.V., Defendant.

### C.A. No. 2:03–3603–PMD.

United States District Court,
D. South Carolina,
Charleston Division.

April 23, 2007.

---

Mark Andrew Mason, Mason Law Firm, Mt. Pleasant, SC, for Plaintiffs.

Milt Wilkinson, Katie, TX, Pro se.

G. Daniel Kelley, Jr., Indianapolis, IN, Pro se.

## ORDER

DUFFY, District Judge.

This matter is before the court upon Plaintiff Connelly Management, Inc. Employee Welfare Benefit Plan's ("Connelly") Motion for Partial Summary Judgment. A hearing was held on April 19, 2007 at 10:30 a.m. For the reasons set forth herein, the court grants Connelly's Motion for Partial Summary Judgment.[1]

---

1. Defendant did not respond to Connelly's motion.

## BACKGROUND

On December 21, 2001, North American Indemnity, N.V. ("NAI") filed the present action [2] in the United States District Court for the Southern District of Texas against American Heartland Health Administrators, Inc. ("AHHA"), a third-party health insurance claims administrator, and its principals. NAI's complaint alleged that AHHA administered medical benefit plans for certain United States based employers and that NAI had entered into agreements with those employers to reinsure the medical claims of their employees under their company medical benefit plans based on bad underwriting provided to NAI by AHHA and its principals.

On March 18, 2002, the case of *McDaniel v. North American Indemnity, N.V.*, No. IP02–C–0422–M/S, was filed as a class action in the United States District Court for the Southern District of Indiana, Indianapolis Division (the "Indiana class action"). The plaintiff class members in the certified Indiana class action were approximately 12,000 participants and beneficiaries of the employer sponsored medical benefit plans seeking recovery against NAI and its foreign principals, Euan David McNicoll and John Anderson, for unpaid medical benefits pursuant to ERISA. McNicoll and Anderson, citizens of the United Kingdom, were personally served with the Indiana class action while they were physically present in the United States conducting the business of NAI. On March 22, 2002, two days after being personally served with the Indiana class action, McNicoll and Anderson took immediate action to strip NAI of its assets.

Several United States employers that had entered into agreements with NAI to reinsure their company medical benefit plans intervened in the Houston–Charles-

ton action on March. 29, 2002. The employer plan sponsors alleged NAI had breached its reinsurance agreements by defaulting on payment of participants' and beneficiaries' medical claims. On April 5, 2002, however, NAI moved to stay the intervention of the employer plan sponsors in the Houston–Charleston action, arguing NAI had a right to arbitrate under the arbitration provision in each of the identical reinsurance agreements.

On June 20, 2002, NAI, acting through its attorney Vincent Busschaert, filed thirty-five separate civil actions in the courts of Belgium against United States employer ERISA plan sponsors that had adopted medical benefit plans reinsured by NAI. According to Plaintiffs, NAI selectively initiated the Belgium litigation against those employer plan sponsors which had the largest amount of unpaid medical claims, and/or against the employer plan sponsors which had intervened in the Houston–Charleston action.

On July 1, 2002, without opposition from NAI, the Houston Court certified a class of all employer ERISA plan sponsors that bought reinsurance through NAI after January 1, 2000 whose claims had not been paid by NAI. The Houston Court also realigned the parties, such that the intervening employer plan sponsors were realigned as class plaintiffs with respect to their claims against NAI, and NAI was realigned as a defendant. The employer plan sponsors that intervened in the Houston–Charleston action filed their First Amended Class Action Complaint on July 29, 2002, and although NAI's answer was due on August 8, 2002, NAI did not answer.

Pedcor Management Company, Inc. objected to the class certification and appealed the Houston Court's class certification

---

**2.** The court refers to this case as the "Houston–Charleston action."

order on August 12, 2002. The Houston–Charleston action was stayed during the pendency of the *Pedcor* appeal, and the Fifth Circuit issued its opinion in *Pedcor* on August 13, 2003. *See Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Tex., Inc.,* 343 F.3d 355 (5th Cir.2003). The Fifth Circuit held that the facts in *Pedcor* were sufficiently similar to *Green Tree Financial Corporation v. Bazzle,* 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003), to bring the case within the *Green Tree* rule. *Pedcor,* 343 F.3d at 359. The Fifth Circuit stated, "As in *Green Tree,* the scope of the questions committed to arbitration in the arbitration provision of the reinsurance contracts is broad, and whether class arbitration is allowed is similarly a dispute in connection with the Agreement." *Id.* (internal quotation marks omitted). The Fifth Circuit thus vacated the certification order and remanded the case to the district court in Houston. *Id.* at 363.

The Houston–Charleston action was transferred to the United States District Court for the District of South Carolina on November 14, 2003. After this transfer, NAI participated in some discovery matters; Plaintiff asserts NAI participated "in what NAI apparently viewed to be the key discovery so initiated by Plaintiffs." (Pl.'s Mem. in Supp. at 13.) Specifically, NAI participated in proceedings KBC Bank, N.V. initiated in Belgium so that KBC would have legal authorization to release NAI's bank records pursuant to subpoena. In addition, NAI objected to the subpoena issued to NAI's California attorney Kevin Marchese and participated in the California subpoena enforcement proceedings which ultimately compelled Marchese to produce NAI's records to Plaintiffs pursuant to the subpoena. On March 19, 2007, Connelly filed the instant Motion for Partial Summary Judgment, arguing NAI waived its right to arbitration.

## STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party 'is particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

## ANALYSIS

While the Fifth Circuit's opinion in *Pedcor* states that an arbitrator must decide

whether the arbitration agreement forbids or allows class certification, the issue currently before the court is whether arbitration is required *at all.* In its Memorandum in Support of its Motion for Partial Summary Judgment, Connelly argues "NAI abandoned, waived, failed to assert, and was in default in proceeding with NAI's prior demand for arbitration, and, the employer ERISA plan sponsors did not demand or seek a determination by a panel of arbitrators on the issue of whether the arbitration provision of the reinsurance agreements permitted class arbitration." (Pl.'s Mem. in Supp. at 9.) Plaintiff asserts that NAI has withdrawn entirely from the present action and is no longer doing business in the United States. (Pl.'s Mem. in Supp. at 9.) Furthermore, Plaintiff produces evidence of the steps NAI's directors took in order to strip the company of its assets two days after they were served with the Indiana class action. (*See* Pl.'s Mot. for Partial Summ. J. Ex. 3.) After remand to the Houston Court, neither party asserted the right to arbitrate, and Plaintiff thus argues the Houston–Charleston action proceeded against NAI as a civil class action dispute. (Pl.'s Mem. in Supp. at 10.)

Because the parties here do not dispute the existence of a valid arbitration agreement and because the case involves interstate commerce, the Federal Arbitration Act ("FAA") applies. *See Hibbard Brown & Co. v. ABC Family Trust,* 959 F.2d 231, 1992 WL 69314, *2 (4th Cir.1992) (unpublished table decision). Title 9, United States Code, Section 2 provides,

A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Furthermore, Section 3 provides,

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

■ Because federal policy favors arbitration, " 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself *or an allegation of waiver, delay, or a like defense to arbitrability.*' " *Patten Grading & Paving, Inc. v. Skanska U.S.A. Bldg. Inc.,* 380 F.3d 200, 204 (4th Cir.2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis in *Patten Grading* )). However, a default or waiver can arise "when the party seeking arbitration 'so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.' " *Patten Grading,* 380 F.3d at 204 (quoting *Maxum Founds., Inc. v. Salus Corp.,* 779 F.2d 974, 981 (4th Cir. 1985)). "Although this principle of 'default' is akin to waiver, the limited circum-

stances giving rise to statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred." *Maxum Founds.*, 779 F.2d at 981. In fact,

> even in cases where the party seeking arbitration has invoked the litigation machinery to some degree, the dispositive question is whether the party objecting to arbitration has suffered *actual prejudice.* Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration. However, delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice.

*MicroStrategy, Inc. v. Lauricia,* 268 F.3d 244, 249 (4th Cir.2001) (internal quotation marks and citations omitted). "The party opposing arbitration on the basis of waiver thus bears a 'heavy burden.'" *Patten Grading,* 380 F.3d at 204 (quoting *MicroStrategy,* 268 F.3d at 251).

The Fourth Circuit's opinion in *MicroStrategy* illustrates the "heavy burden" a party bears in opposing arbitration on the basis of waiver. In that case, the Fourth Circuit held the plaintiff failed to carry this heavy burden because she did not establish sufficient prejudice from MicroStrategy's litigation activities. *MicroStrategy,* 268 F.3d at 254. MicroStrategy filed three separate actions against Lauricia before seeking arbitration, and it requested arbitration approximately one month after Lauricia filed her complaint against MicroStrategy. *Id.* at 250. Lauricia argued MicroStrategy had waived its right to arbitration because it delayed in seeking arbitration and because it engaged in litigation activities. *Id.* The Fourth Circuit stated the delay was insufficient to support a finding of a waiver because MicroStrategy sought arbitration one month after Lauricia filed suit, and the time between the

filing of MicroStrategy's first complaint and when it requested arbitration was six months. *Id.* "Nothing in the record suggests that this delay, in and of itself, caused Lauricia to suffer actual prejudice." *Id.*

The question of "[w]hether MicroStrategy waived its right to insist on arbitration by virtue of its litigation activities[, however, was] a more difficult question." *Id.* The court stated that most of MicroStrategy's conduct in the actions it filed was in connection with its state-law claims seeking to prevent Lauricia from disclosing trade secrets and confidential information; these claims "are distinct, both factually and legally, from Lauricia's discrimination claims." *Id.* Even the fact that MicroStrategy sought declaratory relief involving the same legal and factual issues as those involving Lauricia's claims against MicroStrategy did not convince the Fourth Circuit to find MicroStrategy waived its right to arbitration by its litigation activities; there was no decision on the merits of MicroStrategy's claim for declaratory relief, and the "bulk of the activity in the prior actions was directed toward the state-law claims." *Id.* With respect to prejudice caused by differences in discovery, the Fourth Circuit stated,

> To the extent that the district court based its waiver determination on a conclusion that Lauricia suffered actual prejudice simply by virtue of the difference in the standards governing the availability of discovery in arbitration and in federal court, the district court committed an error of law. To the extent the waiver determination rested on a factual determination that similar discovery would not be available to MicroStrategy in an arbitration proceeding, that conclusion is without evidentiary support.

*Id.* at 252. The Fourth Circuit thus vacated the district court's order denying MicroStrategy's motion to compel arbitration. *Id.* at 254–55.

▆ ·In the case *sub judice*, the court finds NAI has taken several acts inconsistent with its prior demand for arbitration. First, NAI is not participating in this case; as Plaintiff says, NAI has simply vanished. Second, to the limited extent NAI has participated in this action since its transfer from the Houston Court, by opposing certain discovery matters in various jurisdictions, NAI's actions are totally inconsistent with the assertion of a right to arbitration. Third, NAI sued many of the employer plan sponsors in the Belgium courts. All of these actions are inconsistent with the assertion of a right to arbitrate.

Although Connelly argues it is not required to demonstrate prejudice because this case is different from one in which "somebody ... [takes] the full advantage of the litigation process, and then at the last minute when the jury's in the box, wants to go back to arbitrate," the court finds such prejudice exists. (*See* Mot. for Partial Summ. J. Hr'g Tr. 14, Apr. 19, 2007.) In the time since this lawsuit was filed in Texas, NAI's directors stripped the company of its assets and moved these assets "all over the world." (Hr'g Tr. 13.) In addition, while Plaintiff has actively pursued this litigation in the United States, NAI pursued litigation in Belgium, prosecuting some actions to a default status and abandoning others. (Hr'g Tr. 13.) This case involves more than pure delay-NAI vanished from the United States and invoked the judicial process of a foreign nation. Requiring Plaintiffs to submit to arbitration when NAI has failed to cooperate in this lawsuit for more than three years would be unduly prejudicial. Even if Plaintiff is not required to establish prejudice, it has done so. The court, there-

fore, grants Plaintiff's Motion for Partial Summary Judgment, finding NAI has waived its right to arbitration in the case *sub judice*. Lastly, for the convenience of the parties and witnesses, and in the interest of justice, the court hereby transfers this action pursuant to 28 U.S.C. § 1404 to the United States District Court for the Southern District of Indiana.

## *CONCLUSION*

It is therefore **ORDERED,** for the foregoing reasons, that Connelly's Motion for Partial Summary Judgment is hereby **GRANTED.** It is further **ORDERED** that this case is transferred to the United States District Court for the Southern District of Indiana. It is also **ORDERED** that Connelly's counsel is to provide proof of service for the notice of the hearing that took place on April 19, 2007 at 10:30 a.m. If this proof of service indicates NAI received service late, the court keeps the record open to allow NAI to argue against the ruling for a period of twenty (20) days after proof of service indicates NAI received notice.

**AND IT IS SO ORDERED.**