DENNIS, Circuit Judge,
specially concurring:
I join the majority’s opinion, except Part II.l, and write separately to add some observations regarding Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., — U.S.-, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010), which might prove to be crucial in future cases.
1.
I agree with the majority’s conclusion in Part II.l of its opinion that the district court did not err in referring the issue of class arbitration vel non to the arbitrator, but I am not persuaded that “the parties’ agreement to the AAA’s Commercial Rules also constitutes consent to the Supplementary Rules.” Majority Op. 8. Instead, I believe that reference of the question to the arbitrator is required by our circuit precedent in Pedcor Management Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc., 343 F.3d 355 (5th Cir.2003), which held that, “pursuant to Green Tree [Financial Corp. v. Bazzle, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) ], arbitrators should decide whether class arbitration is available or forbidden.” Pedcor, 343 F.3d at 363.
In Pedcor, this court considered the upshot of the splintered decision in Green *647 Tree Financial Corp. v. Bazzle, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). In Green Tree, Justice Breyer wrote a plurality opinion, joined by Justices Scalia, Souter, and Ginsburg, which concluded that the arbitrator, not the court, should decide the class arbitration question. Id. at 453, 123 S.Ct. 2402.[1] Justice Stevens cast the fifth vote for the judgment to vacate and remand the state court’s decision; but he did not join Justice Breyer’s opinion. Id. at 454-55, 123 S.Ct. 2402 (Stevens, J., concurring in the judgment and dissenting in part). Justice Stevens noted that “[ajrguably the interpretation of the parties’ agreement [to permit class arbitration or not] should have been made in the first instance by the arbitrator, rather than the court.” Id. at 455, 123 S.Ct. 2402. However, because Justice Stevens believed that the state court’s “decision to conduct a class-action arbitration was correct as a matter of law, and because petitioner has merely challenged the merits of that decision without claiming that it was made by the wrong decisionmaker,” he did not think that remanding the case was necessary. Id. Nonetheless, Justice Stevens concurred in the plurality’s judgment “[i]n order to avoid [there being no controlling judgment of the Court], and because Justice BREYER’S opinion expresses a view of the case close to my own.” Id.
In analyzing Green Tree, the Pedcor panel applied the well-established principle that “when we are confronted with a plurality opinion, we look to that position taken by those Members who concurred in the judgments on the narrowest grounds.” 343 F.3d at 358 (internal quotation marks omitted). The panel reasoned that Justice Stevens’ opinion “fails to constitute the most narrow grounds on which the case was decided.” Id. at 358. Instead, the Pedcor panel concluded that the narrowest grounds for the Green Tree judgment were those expressed by Justice Breyer’s plurality opinion. Id. at 358-59. Thus, the panel held that “pursuant to Green Tree, arbitrators should decide whether class arbitration is available or forbidden.” Id. at 363. Although the Pedcor panel indicated that Justice Stevens might have tacitly agreed with the plurality on this point, see 343 F.3d at 358-59, that view was not necessary to or part of the Pedcor panel’s holding.
In Stolt-Nielsen, the Court recognized that Justice Stevens’ opinion in Green Tree did not decide the question of whether the arbitrator or the court should decide the class arbitration question, and “[t]hus, [Green Tree ] did not yield a majority decision on” that issue. 130 S.Ct. at 1771-72. However, the Stolt-Nielsen Court explicitly declined to address this issue: “[W]e need not revisit that question here because the parties’ supplemental agreement expressly assigned this issue to the arbitration panel, and no party argues that this assignment was impermissible.” Id. Thus, Stolt-Nielsen does not alter the status of the Green Tree plurality opinion, and does not affect our holding in Pedcor that the Green Tree plurality provided the narrowest grounds for the judgment in that case. Accordingly, in my view we are still bound to follow our precedent in Ped-cor. See Martin v. Medtronic, Inc., 254 F.3d 573, 577 (5th Cir.2001) (“[T]he Supreme Court decision must be more than merely illuminating with respect to the *648 case before us, because a panel of this court can only overrule a prior panel decision if ‘such overruling is unequivocally directed by controlling Supreme Court precedent.’ ” (quoting United States v. Zuniga-Salinas, 945 F.2d 1302, 1306 (5th Cir.1991))). Similarly, the Seventh Circuit recently concluded that Stolt-Nielsen did not upset that court’s post-Green Tree holding in Employers Ins. Co. of Wausau v. Century Indem. Co., 443 F.3d 573 (7th Cir.2006), that the arbitrator should decide whether an arbitration agreement allows for class arbitration. Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co., 671 F.3d 635, 639 (7th Cir.2011) (Easterbrook, C.J.) (“Stolt-Nielsen did not [address whether an arbitrator should decide the class arbitration question]. This leaves in place our post-[Green Tree] decision in Wausau.”).[2]
Therefore, I would follow Pedcor to uphold the district court’s referral of the class arbitration question to the arbitrator.
2.
I agree with the majority that under the principles of Stolt-Nielsen that are clearly applicable to this case, we must reverse the district court’s affirmance of the arbitrator’s class arbitration award and remand the case with instructions to refer the parties to bilateral arbitration. However, a careful reading and assessment of Stoltr-Nielsen reveals that it is distinguishable from the present case in respects that may be significant in future cases.
First, as the majority notes, Majority Op. 11, Stolt-Nielsen fully reaffirmed the exceedingly deferential standard that federal courts must apply when reviewing arbitration decisions. Indeed, the Court began its analysis in Stolt-Nielsen by restating this deference in no uncertain terms; “Petitioners contend that the decision of the arbitration panel must be vacated, but in order to obtain that relief, they must clear a high hurdle.” 130 S.Ct. at 1767. The Court explained this exceptionally narrow standard of judicial review of arbitral decisions: “It is not enough for petitioners to show that the [arbitration] panel committed an error — or even a serious error.” Id. (citing E. Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000); United Paperworkers Int’l Union AFL-CIO v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). Instead, the Court stated, “[i]t is only when [an] arbitrator strays from interpretation and application of the agreement and effectively ‘dispense^] his own brand of industrial justice’ that his decision may be unenforceable.’ ” Id. (alterations in original) (quoting Major League Baseball Players Ass’n v. Garvey, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (per curiam), in turn quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)); see also United Paperworkers, 484 U.S. at 38, 108 S.Ct. 364 (“[A]s long as the arbitrator is even arguably construing or applying the contract and *649 acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.”); United Steelworkers, 363 U.S. at 597, 80 S.Ct. 1358 (an arbitration award must be upheld “so long as it draws its essence” from the agreement). Thus, Stolt-Nielsen reaffirmed the Court’s longstanding precedent that courts must review arbitration decisions with the utmost deference.
The Court’s decision to vacate the arbitrator’s class arbitration decision in Stolt-Nielsen did not alter this exceptionally deferential standard of review. There, the Court, in deciding that the arbitration panel had exceeded its power, relied upon and repeatedly called attention to the fact that the parties had expressly stipulated that they had reached no agreement on the issue of class arbitration. 130 S.Ct. at 1768 (“[T]he parties agreed their agreement was ‘silent’ in the sense that they had not reached any agreement on the issue of class arbitration.”); id. at 1766 (“The parties ... stipulated that the arbitration clause was ‘silent’ with respect to class arbitration. Counsel for [the Respondent] explained to the arbitration panel that the term ‘silent’ did not simply mean that the clause made no express reference to class arbitration. Rather, he said, ‘[a]ll the parties agree that when a contract is silent on an issue there’s been no agreement that has been reached on the issue.’ ”). Thus, “the [arbitration] panel had no occasion to ascertain the parties’ intention” regarding class arbitration “because [their stipulation stated that] the parties were in complete agreement regarding their intent.” Id. at 1770 (internal quotation marks omitted) (“Th[eir] stipulation left no room for an. inquiry regarding the parties’ intent, and any inquiry into that settled question would have been outside the panel’s assigned task.”). The Court did not need to undertake a deferential review of the arbitration contract or the arbitration panel’s class arbitration decision; but instead, merely “held that [the] arbitration panel exceeded its power under the FAA by imposing class arbitration procedures based on policy judgments rather than the arbitration agreement itself or some background principle of contract law.” AT&T Mobility LLC v. Concepcion, — U.S. -, 131 S.Ct. 1740, 1750, 179 L.Ed.2d 742 (2011) (citing Stolt-Nielsen, 130 S.Ct. at 1773-76). Thus, the Court did not alter the usual, exceedingly deferential standard of judicial review that courts must apply to arbitrators’ contract interpretations based on the parties’ written agreement itself or on some background principle of contracts law.
Second, Stolt-Nielsen does not require that there be an express agreement to class arbitration in order for arbitrators, within their powers, to find that the parties agreed to class arbitration. See Stolt-Nielsen, 130 S.Ct. at 1775 (“[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.”); id. at 1776 n. 10 (“We have no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration.”); see also id. at 1783 (Ginsburg, J., dissenting) (“[T]he Court does not insist on express consent to class arbitration.”). There simply is no basis for the arbitrator to find such an implicit agreement to class arbitration in the present case; however, there may be such a basis in the parties’ agreements in other cases.
Third, Stolt-Nielsen did not address a case in which a party is unsophisticated and the arbitration agreement is part of a *650 contract of adhesion;[3] and in which “adjudication is costly and individual claims are no more than modest in size, [in which case,] without [class proceedings], potential claimants will have little, if any, incentive to seek vindication of their rights.” See id. at 1783 (Ginsburg, J., dissenting) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)); see also id. (“ ‘The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.’ ” (quoting Carnegie v. Household Int’l, Inc., 376 F.3d 656, 661 (7th Cir.2004))). In other cases, the Court has “recognized [arbitration] as an effective vehicle for vindicating statutory rights, but only ‘so long as the prospective litigant may effectively vindicate its statutory cause of action in the arbitral forum.’ ” In re Am. Express Merchants’ Litig., 667 F.3d 204, 214 (2d Cir.2012) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 636-37, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). That is, the Court has “noted that should clauses in a contract operate ‘as a prospective waiver of a party’s right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy.’ ” In re Am. Express Merchants’ Litig., 667 F.3d at 214 (quoting Mitsubishi, 473 U.S. at 637 n. 19, 105 S.Ct. 3346). Such considerations led the Second Circuit recently to conclude that a class arbitration waiver provision was unenforceable, and that Stolt-Nielsen does not hold otherwise. Id. at 216-19.[4] Although the instant case involves an adhesive consumer contract, the stakes — roughly $51,000 in student loan debt — are high enough that we may not be justified in determining that “potential claimants,” such as Reed, “will have little, if any, incentive to seek vindication of their rights.” Stolt-Nielsen, 130 S.Ct. at 1783 (Ginsburg, J., dissenting). However, in different kinds of future cases, courts may need to consider whether an arbitrator can properly find an implicit agreement to class arbitration procedures because bilateral arbitration would otherwise offer claimants to modest amounts no practicable or realistic remedy.
Subject to my disagreement with the majority’s reasoning in Part II.l, and with the foregoing observations on the Court’s decision in Stolt-Nielsen, I concur in the remainder of the majority opinion.

. Chief Justice Rehnquist, joined by Justices O'Connor and Kennedy, dissented on the grounds that "this determination is one for the courts, not for the arbitrator,” Green Tree, 539 U.S. at 455, 123 S.Ct. 2402 (Rehnquist, C.J., dissenting); and Justice Thomas dissented separately on the basis that he "believe[d] that the [FAA] does not apply to proceedings in state courts,” 539 U.S. at 460, 123 S.Ct. 2402 (Thomas, J., dissenting).

. See also Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 232 (3d Cir.2012) ("Silence regarding class arbitration generally indicates a prohibition against class arbitration, but the actual determination as to whether class action is prohibited is a question of interpretation and procedure for the arbitrator.” (citing Stolt-Nielsen, 130 S.Ct. at 1775)); Vilches v. The Travelers Companies, Inc., 413 Fed.Appx. 487, 492 (3d Cir.2011) (unpublished) (following Green Tree plurality and Stolt-Nielsen in holding, "[w]here contractual silence is implicated, ‘the arbitrator and not a court should decide whether a contract [was] indeed silent on the issue of class arbitration,' and 'whether a contract with an arbitration clause forbids class arbitration.’ " (alteration in original) (quoting Stolt-Nielsen, 130 S.Ct. at 1771-72) (internal quotation mark omitted)).

.In Stolt-Nielsen the arbitration agreement was between "sophisticated business entities,” where the form of the agreement was selected by the entity seeking class arbitration, and high-stakes, international antitrust claims were involved. 130 S.Ct. at 1775; id. at 1764-65; Joint Appendix at 73a, Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (No. 08-1198), 2009 WL 2777896.

.Cf. Cruz v. Cingular Wireless, LLC, 648 F.3d 1205, 1215 (11th Cir.2011) (noting "the possibility that in some cases, an arbitration agreement may be invalidated on public policy grounds where it effectively prevents the claimant from vindicating her statutory cause of action” because of a class arbitration waiver (citing Mitsubishi, 473 U.S. at 637, 105 S.Ct. 3346)).