# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 18, 2012

Lyle W. Cayce
Clerk

No. 11-50509

JEFFREY H. REED,

Plaintiff–Appellee

v.

FLORIDA METROPOLITAN UNIVERSITY, INCORPORATED;
CORINTHIAN COLLEGES, INCORPORATED,

Defendants–Appellants

Appeal from the United States District Court
for the Western District of Texas

Before KING, BENAVIDES, and DENNIS, Circuit Judges.

KING, Circuit Judge:

Defendants–Appellants Florida Metropolitan University and Corinthian Colleges appeal the district court's confirmation of an arbitral award that requires them to submit to class arbitration. They contend that the district court, not the arbitrator, should have decided whether the parties' agreement provided for class arbitration, and that the district court should have vacated the arbitrator's class arbitration award. Because the parties agreed that the arbitrator should decide the class arbitration issue, we conclude that the district court correctly referred that issue to the arbitrator. The district court erred, however, in confirming the award because the arbitrator exceeded his powers.

No. 11-50509

We therefore REVERSE the district court's order and REMAND for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2008, Plaintiff–Appellee Jeffrey Reed ("Reed") enrolled in Everest University Online's ("Everest") distance learning program,[1] and subsequently obtained a bachelor's degree in paralegal studies. Reed planned to attend law school upon graduation, and enrolled in Everest after receiving assurances from school officials that the college's degree would be accepted by educational institutions and employers. Reed soon discovered, however, that law schools would not recognize his bachelor's degree, nor would the local police department, where he sought employment. Reed accrued more than $51,000 in student loan debt while attending Everest.

Dissatisfied with his experience at Everest, Reed filed a putative class action in Texas state court, alleging that Defendants–Appellants Corinthian Colleges and Florida Metropolitan University (together, the "School") had violated certain provisions of the Texas Education Code by soliciting students in Texas without the appropriate certifications.[2] Reed sought approximately $51,000 in damages, plus attorney's fees. Reed defined the putative class as "[a]ny person who contracted to receive distance education from Everest University Online while residing in Texas."

---

[1] Everest is a brand of Defendant–Appellant Corinthian Colleges, Inc. Defendant–Appellant Florida Metropolitan University, Inc. is a subsidiary of Corinthian Colleges.

[2] Specifically, Reed alleged violations of Texas Education Code § 132.051(a), which requires that schools not advertise or solicit in Texas until they receive the appropriate certificate of approval from the Texas Workforce Commission, and Texas Education Code § 132.059(a), which requires employees of career schools or colleges to register with the Commission.

No. 11-50509

The School removed the action to the district court, and then moved to compel individual arbitration pursuant to the arbitration provision of the Enrollment Agreement. The arbitration provision provides, in relevant part:

> The student agrees that any dispute arising from my enrollment at Everest University, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ("AAA") under its Commercial Rules. The award rendered by the arbitrator may be enforced in any court having jurisdiction.
>
> **Terms of Arbitration**
> 1. Both student and Everest University irrevocably agree that any dispute between them shall be submitted to Arbitration.
>
> 2. Neither the student nor Everest University shall file or maintain any lawsuit in any court against the other, and agree that any suit filed in violation of this Agreement shall be dismissed by the court in favor of an arbitration conducted pursuant to this Agreement.
>
> . . .
>
> 4. The arbitrator's decision shall be set forth in writing and shall set forth the essential findings and conclusions upon which the decision is based.
>
> 5. Any remedy available from a court under the law shall be available in the arbitration.
>
> . . .
>
> ***Acknowledgment of Waiver of Jury Trial and Availability of AAA Rules***
>
> By my signature on the reverse, I acknowledge that I understand that both I and Everest University are irrevocably waiving rights to a trial by jury, and are selecting instead to submit any and all claims to the decision of an arbitrator instead of a court. I understand that the award of the arbitrator will be binding, and not merely advisory.

No. 11-50509

The district court granted the School's motion to compel arbitration and stayed the action pending arbitration. It found that a valid arbitration agreement existed, that the parties' dispute was within the scope of the agreement, and that the arbitration clause was not unconscionable. The district court declined, however, to address whether the parties' agreement provided for class arbitration, concluding that the issue is "more appropriately decided by the arbitrator."

The case then proceeded before an American Arbitration Association ("AAA") arbitrator. Reed moved for a Clause Construction Award under the AAA Supplementary Rules for Class Arbitration, seeking class arbitration. The arbitrator determined that the parties implicitly agreed to class arbitration and entered an award to that effect. Reed then sought to confirm the arbitration award in the district court, and the School moved to vacate the award on the basis that the arbitrator exceeded his powers. The School argued that the award conflicted with the recent Supreme Court decisions in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758 (2010), and *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). The district court confirmed the award, finding it to be consistent with recent precedent and a "reasonable interpretation of the contract in light of the [Federal Arbitration Act] and Texas law." The School appealed.

## II. DISCUSSION

This appeal requires us to address two issues. Our first task is to determine whether the district court erred when it allowed the arbitrator to decide whether the parties agreed to class arbitration. Second, we must decide whether the district court properly denied the School's motion to vacate the arbitrator's award.

4

No. 11-50509

1.   *The District Court Properly Referred the Class Arbitration Issue to the Arbitrator*

The School contends that the district court erred when it allowed the arbitrator to determine whether the parties' arbitration agreement allowed for class arbitration, instead of deciding the issue itself.  We disagree.

The Supreme Court has not definitively decided this issue.  In *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), four Justices concluded that the class arbitration issue did not constitute a "gateway" or arbitrability matter that is generally decided by a court, but was instead a procedural matter for the arbitrator. *Id.* at 452.  In *Stolt-Nielsen*, the Court confirmed that *Green Tree* "did not yield a majority decision" on this issue.  130 S. Ct. at 1772.  The *Stolt-Nielsen* Court declined to revisit the question because the parties in that case had agreed to submit the question to the arbitrator rather than the court.  *Id.*  At least at the Supreme Court level, therefore, the question remains open.[3]

According to the School, the district court should have resolved the class arbitration issue because the parties expressly submitted that issue to the court for resolution.  We disagree.  Reed's opposition to the School's motion to compel arbitration was restricted largely to issues of the applicability and unconscionability of the arbitration clause.  Reed, in fact, requested that the court "find that no valid, enforceable arbitration agreement exists, and that Plaintiff may proceed with this case before [the district court]."  Reed's discussion of class arbitration came only when he argued that requiring

---

[3] In *Pedcor Management Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.*, 343 F.3d 355 (5th Cir. 2003), a panel of this court held that the class arbitration decision should be made by an arbitrator rather than a court. The *Pedcor* panel premised its decision upon *Green Tree*, which it interpreted to hold that class arbitration determinations "should be for the arbitrator, not the courts, to decide." *Id.* at 359. The Supreme Court in *Stolt-Nielsen*, however, emphasized that, on this point, *Green Tree* was only a plurality decision. 130 S. Ct. at 1772. Because the parties here consented to the Supplementary Rules, and therefore agreed to submit the class arbitration issue to the arbitrator, we need not and do not revisit this issue.

individual arbitration would render the arbitration agreement unconscionable. Although Reed argued that the case should proceed as a class even if it were referred to arbitration, he did so only in response to the School's motion to compel arbitration.  Nor did the district court understand Reed to make a class arbitration argument.  It summarized, "Reed . . . argues that his claims are not within the scope of the arbitration agreement, that Defendants are not parties to the arbitration agreement, that Texas law makes the arbitration agreement unenforceable, and that the arbitration agreement is illusory and unconscionable, and thus unenforceable."  Indeed, as Reed sought to avoid arbitration altogether and to proceed as a class action, we cannot conclude that he intended to submit the class arbitration issue to the district court.

We now turn to the arbitration rules to which the parties agreed. As noted above, the parties explicitly agreed to adopt the AAA's Commercial Rules when they entered into their agreement in 2008. These rules do not contain class arbitration procedures; rather, such procedures are provided in the separate Supplementary Rules for Class Arbitration, which were enacted in October 2003 after the Supreme Court's *Green Tree* decision. *See Stolt-Nielsen*, 130 S. Ct. at 1765 (discussing development of Supplementary Rules). Shortly before it issued the Supplementary Rules, the AAA explained, "[t]he Association's various rules are silent on the issue of class arbitration and the Association has taken no position on the availability of class arbitrations. To accommodate these types of cases, the Association has commenced drafting supplementary rules that will govern the Association's administration of class arbitrations." AAA Policy Statement, *available at* http://www.adr.org/index2.1.jsp?JSPssid=15753& JSPaid=43425. By their terms, these Supplementary Rules apply "to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ('AAA') where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall

supplement any other applicable AAA rules." Suppl. R. 1(a). They also apply "whenever a court refers a matter pleaded as a class action to the AAA for administration." *Id.*

Commentators and AAA arbitral tribunals have consistently concluded that consent to any of the AAA's substantive rules also constitutes consent to the Supplementary Rules.[4] A major arbitration treatise concludes that "[t]hese AAA Supplementary Rules for Class Arbitrations . . . supplement any other applicable AAA rules. For example, if a dispute that otherwise would be arbitrated under the Commercial Arbitration Rules involves a purported class, then the proceeding is governed by both the AAA Commercial Arbitration Rules and the AAA Supplementary Rules for Class Arbitrations." Thomas H. Oehmke, 1 COMMERCIAL ARBITRATION § 16:16 (Apr. 2012). The few courts to have considered this issue have agreed. *See Bergman v. Spruce Peak Realty, LLC*, No. 2:11-CV-127, 2011 WL 5523329, at * (D. Vt. Nov. 14, 2011) (relying upon Supplementary Rules when referring class arbitration issue to the arbitrator, where parties agreed to "the Commercial Arbitration Rules of the AAA"); *S. Commc'ns Servs., Inc. v. Thomas*, __ F. Supp. 2d __, 2011 WL 5386428, at *10 (N.D. Ga. Nov. 3, 2011) (holding that AAA Wireless Industry Arbitration Rules "incorporate the AAA Supplementary Rules for Class Arbitrations, which gave the arbitrator the power to decide whether the Arbitration Clause implicitly authorized class

---

[4] One arbitral tribunal confronted with this issue concluded that the Supplementary Rules applied to an arbitration commenced in 2004, even though the parties' arbitration agreement—which was governed by "the Rules of the American Arbitration Association"—was signed approximately five years before the Supplementary Rules were enacted. *See Presidents and Fellows of Harvard College v. JSC Surgutneftegaz*, 770 PLI/Lit. 127, 135 n.5 (2008). The panel, relying upon Supplementary Rule 1, explained, "[s]ince the AAA rules apply here—something clear on the face of the [parties'] Agreement—the Supplementary Rules also apply." *Id.* One member of the panel dissented from this conclusion, reasoning that the Supplementary Rules could not be incorporated into the parties' arbitration clause because the Supplementary Rules did not exist at the time the parties entered into their agreement. *Id.* at 170 (Zykin, dissenting).

No. 11-50509

proceedings"); *Yahoo! Inc. v. Iversen*, __ F. Supp. 2d __, 2011 WL 4802840, at *4 (N.D. Cal. Oct. 11, 2011) (holding that parties' agreement to AAA National Rules for the Resolution of Employment Disputes also constituted agreement to the Supplementary Rules). Consistent with these authorities, we conclude that the parties' agreement to the AAA's Commercial Rules also constitutes consent to the Supplementary Rules.[5]

With this conclusion, we now turn to the substance of the Supplementary Rules. Under Supplementary Rule 3, "the *arbitrator* shall determine as a threshold matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class . . . ." AAA Suppl. R. 3 (emphasis added). The parties' consent to the Supplementary Rules, therefore, constitutes a clear agreement to allow the arbitrator to decide whether the party's agreement provides for class arbitration. As such, we need not determine whether, in the absence of such an agreement, the threshold matter of bilateral or class arbitration should be decided by a court or an arbitrator.[6]

In light of the foregoing, we conclude that the district court correctly referred the class arbitration issue to the arbitrator. We now must decide whether the district court properly confirmed the arbitrator's class arbitration award.

---

[5] In so holding, we note that the parties have never specifically disputed the applicability of the Supplementary Rules. The School, in its motion to vacate the clause construction award, in fact represented to the district court that it had agreed to those Rules. *See* R. 341 ("The AAA rules *to which these parties agreed* provide that a clause construction award would be subject to a motion to vacate . . . .") (citing Supplementary Rule 3) (emphasis added).

[6] The parties' adoption of the AAA Commercial Rules and the Supplementary Rules cannot, however, be considered in deciding whether they agreed to arbitrate as a class. *See* AAA Suppl. R. 3 ("In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.").

No. 11-50509

*2.     The District Court Erred in Confirming the Arbitration Award*

After a hearing, the arbitrator issued an award in which he determined that the parties' arbitration provision allowed for class arbitration.  The district court granted Reed's motion to confirm the award and denied the School's cross-motion to vacate the award.  The School contends that the arbitration award is inconsistent with *Stolt-Nielsen*, and that the arbitrator exceeded his authority by ordering the parties into class arbitration without a sufficient contractual basis.  Reed responds that the award is compatible with *Stolt-Nielsen*, and that the exceedingly deferential standard of review applicable to arbitration awards precludes us from vacating the award.  For the reasons discussed below, we agree with the School and conclude that the district court erred in failing to vacate the award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(4).

*A.     Standard of Review*

Our review of the district court's confirmation of an arbitral award is de novo, "using the same standard as the district court." *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 314 (5th Cir. 2011). Because we have concluded that the district court properly referred the class arbitration issue to the arbitrator, our review of the arbitration award itself is governed by the FAA.[7]  Under the FAA, a party to an arbitration may apply to a court for an order confirming an arbitration award, and the court "must grant such an order unless the award is vacated, modified, or corrected . . . ."  9 U.S.C. § 9.  Section 10 of the FAA lists

---

[7] The School contends that de novo review of the award is proper because the class arbitration issue is one of arbitrability that should have been considered by the district court. Because we have concluded that the parties agreed to submit the issue to the arbitrator, we need not consider whether class arbitration constitutes an arbitrability issue. Nor would the arbitrability determination necessarily be conclusive, as parties may agree to submit arbitrability questions to an arbitrator. *See Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability' . . . .") (citing *Howsam v. Dean Witters Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002)).

9

four grounds upon which to vacate an award, the last of which allows for vacateur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

Of the various grounds for vacating an arbitral award provided in Section 10, this fourth ground has received the most attention. In *Wilko v. Swan*, 346 U.S. 427 (1953), *overruled on other grounds by Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989), the Supreme Court explained that the "[p]ower to vacate an award is limited," but an arbitrator's failure to decide a case in accordance with the applicable law may constitute grounds for vacating the award if that failure is "made clearly to appear." *Id*. at 436. On several occasions, the Court has considered whether a lower court properly set aside an arbitrator's interpretation of a collective bargaining agreement or other contract. The Court has consistently made clear that a court may not decline to enforce an award simply because it disagrees with the arbitrator's legal reasoning. *See, e.g.*, *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000). Nevertheless, an arbitrator's award is not entirely beyond reproach:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. *He may of course look for guidance from many sources, yet his award is legitimate only as long as it draws its essence from the collective bargaining agreement.* When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) (emphasis added).[8] In *United Steelworkers*, the Court explained that "[i]t

---

[8] We have explained that an arbitrator's award "draws its essence" from the contract where the award "ha[s] a basis that is at least rationally inferable, if not obviously drawn,

is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.* at 599. This principle was echoed in *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29 (1987), where the Supreme Court again discussed the limited role of a court in reviewing an arbitrator's interpretation of a contract. The Court explained that "[t]he arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract." *Id.* at 38. Thus, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* The Supreme Court's recent decision in *Stolt-Nielsen*, 130 S. Ct. 1758 (2011), which we discuss further below, reaffirmed this exceptionally deferential standard of review. *See id.* at 1767-68.

Consistent with this precedent, we have recognized that "judicial review of an arbitration award is extraordinarily narrow" and "exceedingly deferential." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, __ F.3d __, 2012 WL 753263, at *2 (5th Cir. Mar. 9, 2012) (citation and internal quotation marks omitted). We will therefore not set aside an award for "a mere mistake of fact or law." *Id.* (citation and internal quotation marks omitted); *see also Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007).

---

from the letter or purpose of the . . . agreement. . . . [T]he award must, in some logical way, be derived from the wording or purpose of the contract." *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990) (citations and internal quotation marks omitted) (alteration in original); *see also Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994).

No. 11-50509

## B.    *The Arbitrator Exceeded his Powers*

With this understanding of our limited review, we now consider whether the arbitrator in this case exceeded his powers when he concluded that the parties' agreement permitted class arbitration.  Because we find that the arbitrator forced the parties into class arbitration without a contractual basis for doing so, we conclude that the arbitrator exceeded his powers and that the award must be vacated.

### i.    Stolt-Nielsen

This appeal comes before us in the wake of the Supreme Court's recent decision in *Stolt-Nielsen*, 130 S. Ct. 1758 (2010).  In that case, Stolt-Nielsen and AnimalFeeds had entered into an agreement for the shipment of goods.  The parties' agreement contained an arbitration provision that provided in part: "[a]ny dispute arising from the making, performance or termination of this Charter Party shall be settled in New York . . . .  Such arbitration shall be conducted in conformity with the provisions and procedure of the United States Arbitration Act [*i.e.*, the FAA], and a judgment of the Court shall be entered upon any award made by said arbitrator."  *Id.* at 1765.  After a Department of Justice criminal investigation revealed that Stolt-Nielsen was engaged in an illegal price-fixing conspiracy, AnimalFeeds brought a putative class action in federal court.  *Id.*  AnimalFeeds subsequently served Stolt-Nielsen with a demand for class arbitration, and the parties agreed to submit the class arbitration question to a panel of three arbitrators.  *Id.*  The parties also stipulated that their agreement was "silent" with respect to class arbitration, meaning that they had reached "no agreement" on the issue.  *Id.* at 1766.  The arbitrators concluded that the parties' agreement provided for class arbitration.  On Stolt-Nielsen's motion, the district court vacated the award, but the Second Circuit reversed.  *Id.*

No. 11-50509

On appeal, the Supreme Court held that the district court properly vacated the award. The Court first reemphasized that a party seeking vacateur must "clear a high hurdle," as it is "not enough for petitioners to show that the panel committed an error—or even a serious error." *Id.* at 1767. As the Court explained, "[i]t is only where [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." *Id.* (citations and internal quotation marks omitted). Where that happens, an arbitration award may be vacated on the basis that the arbitrator exceeded his powers, "for the task of an arbitrator is to interpret and enforce a contract, not to make public policy." *Id.*

The Court explained that, because the parties stipulated that their agreement was silent on class arbitration, the arbitrators' "proper task was to identify the rule of law that governs," presumably "the FAA itself or to one of the two bodies of law that the parties claimed were governing, *i.e.*, either federal maritime law or New York law." *Id.* at 1768. However, instead of "inquiring whether the FAA, maritime law, or New York law contains a 'default rule' under which an arbitration clause is construed as allowing class arbitration in the absence of express consent, the panel proceeded as if it had the authority of a common-law court to develop what it viewed as the best rule to be applied in such a situation." *Id.* at 1768-69. The arbitrators perceived a consensus favoring class arbitration, and considered only whether there was a "good reason not to follow that consensus."[9] *Id.* at 1769. Finding no such reason, the arbitration panel determined that the parties' agreement permitted class

---

[9] In this respect, the Court faulted the arbitrators for discounting expert evidence that bilateral rather than class arbitration was customary in maritime agreements. The Court also explained that, "[u]nder both New York law and general maritime law, evidence of 'custom and usage' is relevant to determining the parties' intent when an express agreement is ambiguous." *Stolt-Nielsen*, 130 S. Ct. at 1769 n.6.

13

arbitration. The Court concluded that "the panel simply imposed its own conception of sound policy," and thereby exceeded its powers. *Id.* Finding that there was only one possible outcome—bilateral arbitration—the Court vacated the award and declined to direct a rehearing by the arbitrators. *Id.* at 1770.

The Court then addressed the "standard to be applied by a decision maker in determining whether a contract may permissibly be interpreted to allow class arbitration," a question left undecided by *Green Tree*. *Id.* at 1772. The Court based its analysis on the FAA's basic precept that arbitration "is a matter of consent, not coercion." *Id.* at 1773. In this respect, parties are "generally free to structure their arbitration agreements as they see fit," and to "specify *with whom* they choose to arbitrate their disputes." *Id.* at 1774 (emphasis in original) (citations and internal quotation marks omitted). As such, the Court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 1775 (emphasis in original). The arbitrators had erred by "impos[ing] class arbitration even though the parties concurred that they had reached 'no agreement' on that issue." *Id.* In fact, the panel had faulted the parties for failing to preclude class arbitration, and "regarded the agreement's silence on the question of class arbitration as dispositive." *Id.* This conclusion, the Court found, was "fundamentally at war with the foundational FAA principle that arbitration is a matter of consent." *Id.*

In so deciding, the Court explained that arbitrators may properly presume authorization to impose certain procedural requirements, but "[a]n implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate." *Id.* This is so, the Court explained, "because class-action arbitration changes the nature of the arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Id.*

No. 11-50509

The Court then described several fundamental differences between bilateral and class arbitration. For example, in class arbitration, the arbitrator "no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties," and the presumption of privacy and confidentiality that applies in many bilateral arbitrations would not apply in class arbitrations. *Id.* at 1776. Further, "[t]he arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well." *Id.* Additionally, although the stakes are similar to those in class action litigation, "the scope of judicial review is much more limited." *Id.* The Court explained that these differences and disadvantages "give reason to doubt the parties' mutual consent to resolve disputes through class-wide arbitration." *Id.* at 1775-76. The Court therefore concluded that "the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id.* at 1776. In light of these "crucial differences," the majority saw the question as "being whether the parties *agreed to authorize* class arbitration." *Id.* (emphasis in original). Because the parties had agreed that their contract was silent on the subject, they could not be "compelled to submit their dispute to class arbitration." *Id.* The Court, however, declined to "decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration," in light of the parties' stipulation of silence. *Id.* at 1776 n.10.

Justice Ginsburg, joined by Justices Stevens and Breyer, dissented. The dissent criticized the majority for not affording the arbitration award the proper deference. Because the parties had agreed to submit the class arbitration issue to the arbitrators, the arbitrators did not exceed their authority in resolving the

15

dispute. *Id.* at 1780 (Ginsburg, J., dissenting). Rather, they properly addressed the "procedural mode available for presentation of AnimalFeeds' antitrust claims." *Id.* at 1781.

The Supreme Court reiterated many of the same concerns regarding class arbitration a year later in *Concepcion*, 131 S. Ct. 1740 (2011), wherein it held that a state law prohibiting class action waivers in arbitration agreements was preempted by the FAA. *Id.* at 1753. In so holding, the *Concepcion* Court explained that class arbitration "includes absent parties, necessitating additional and different procedures and involving higher stakes. Confidentiality becomes more difficult. And while it is theoretically possible to select an arbitrator with some expertise relevant to the class-certification question, arbitrators are not generally knowledgeable in the often-dominant procedural aspects of certification . . . ." *Id.* at 1750. The Court also emphasized that arbitral awards are subject to limited appellate review, and raised concerns that defendants might feel increased pressure to settle questionable claims when confronted with class arbitration. *Id.* at 1752. Given these disadvantages, the Court found "it hard to believe that defendants" would agree to class arbitration and thereby "bet the company with no effective means of review." *Id.* As such, *Concepcion* held that "class arbitration, to the extent it is manufactured by [state law] rather than consensual, is inconsistent with the FAA." *Id.* at 1751-52.

Therefore, in light of the significant disadvantages of class arbitration as discussed in both *Stolt-Nielsen* and *Concepcion*, an arbitrator (or a court) should not conclude that parties—and defendants in particular—consented to such a proceeding absent a contractual basis for doing so. Although the agreement to submit to class arbitration may be implicit, it should not be lightly inferred.[10]

---

[10] This understanding is consistent with Texas law, which provides: "[F]or a court to read additional provisions into [a] contract, the implication must clearly arise from the language used, or be indispensable to effectuate the intent of the parties. It must appear that

*See* 130 S. Ct. at 1775; *id.* at 1782 (Ginsburg, J. dissenting) ("The breadth of the arbitration clause, and the absence of any provision waiving or banning class proceedings, will not [support class arbitration].") (footnote omitted); *id.* at 1783 ("[T]he Court does not insist on express consent to class arbitration."); *see also* Christopher R. Drahozal & Peter B. Rutledge, *Contract and Procedure*, 94 MARQ. L. REV. 1103, 1151 (2011) ("[In *Stolt-Nielsen*], [t]he Supreme Court held that the default rule is that class arbitration is not permitted, explaining that class arbitration is sufficiently different from individual arbitration that the parties must agree as a contractual matter to override that default rule."); Terry F. Moritz & Brandon J. Fitch, *The Future of Consumer Arbitration in Light of* Stolt-Nielsen, 23 LOY. CONSUMER L. REV. 265, 270 (2010) ("*Stolt-Nielsen* seems to signal the end of inferred class arbitration . . . . A court cannot compel class arbitration without a contractual basis for concluding that the parties agreed to it; and presumably no potential defendant would agree to it."). In the absence of a contractual agreement, an arbitrator should inquire into "whether the FAA, [or state law] contains a 'default rule' under which an arbitration clause is construed as allowing class arbitration," instead of simply "develop[ing] what [he] view[s] as the best rule to be applied in such a situation." *Stolt-Nielsen*, 130 S. Ct. at 1768-69. Without a contractual or other legal basis for class arbitration, an arbitrator has no authority to order the parties to submit to class arbitration. *See Concepcion*, 131 S. Ct. at 1750 ("In [*Stolt-Nielsen*] we held that an arbitration panel exceeded its powers under § 10(a)(4) of the FAA by imposing class procedures based on policy judgments rather than the arbitration agreement itself or some background principle of contract law that would affect its interpretation."); *see also United Steelworkers of Am. v. Enter. Wheel and Car*

---

the implication was so clearly contemplated by the parties that they deem it unnecessary to express it." *Fuller v. Phillips Petroleum Co.*, 872 F.2d 655, 658 (5th Cir. 1989); *see Danciger Oil & Ref. Co. of Tex. v. Powell*, 154 S.W.2d 632, 635 (Tex. 1941).

No. 11-50509

*Corp.*, 363 U.S. 593, 597 (1960) (stating that an arbitrator's award is "legitimate only as long as it draws its essence" from the contract).

With this understanding of *Stolt-Nielsen*, we now turn to whether the arbitrator in this case exceeded his powers by ordering the parties to submit to class arbitration.

### ii.    *Arbitrator's Award*

In his award, the arbitrator began by acknowledging that the class arbitration issue presented a "close case," and was primarily governed by *Stolt-Nielsen*. After determining that the FAA and Texas law applied,[11] he then focused on two provisions of the parties' arbitration agreement: (1) the "any dispute" provision, which provides, "[t]he student agrees that any dispute arising from my enrollment at Everest University, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association . . . under its Commercial Rules;" and (2) the "any remedy" provision, which provides, "[a]ny remedy available from a court under the law shall be available in the arbitration." The arbitrator concluded that, "[w]hen these two provision[s] are read in the context of the entire Agreement, the [School] implicitly agreed to class arbitration," and there was a sufficient "'contractual basis' for class arbitration." The arbitrator based his conclusion in part upon Section 132.121(a) of the Texas Education Code, which provides for class action litigation to address certain violations of the Education Code. He reasoned that, if the arbitration clause had not been included in the contract, then the School "would have clearly been required to submit to a class action lawsuit." While he acknowledged that this provision of Texas law was not controlling, he explained that it is "not inconsistent with the FAA," and it "provides guidance in interpreting the contract language agreed to

---

[11] The parties agreed that Texas law governed.

18

by the Parties." The arbitrator also relied upon the School's failure to expressly ban class arbitration, reasoning that the School "drafted the Agreement in question," and they "could have clearly set forth that class arbitration was barred if they so chose," but they "chose not to do so."

Upon our deferential review of the award, we conclude that the arbitrator exceeded his authority by ordering the parties into class arbitration without a sufficient basis for concluding that the parties agreed to resolve their dispute in this manner. *Stolt-Nielsen*, 130 S. Ct. at 1775. Although the parties here did not stipulate that their agreement was silent on class arbitration, unlike the parties in *Stolt-Nielsen*, Reed admitted before the arbitrator that "the parties clearly did not discuss whether class arbitration was authorized," and that "[t]he arbitration agreement at issue here fails to address class arbitration." In light of these concessions, the arbitrator should have consulted state or federal law to determine if a certain "default" class arbitration rule existed in the absence of an agreement. *Id.* at 1770.[12] Instead, the arbitrator focused upon the terms of the parties' contract. None of the provisions the arbitrator identified, however, even remotely relates to or authorizes class arbitration.

First, the arbitrator improperly relied upon the "any dispute" clause of the arbitration agreement. The "any dispute" clause is a standard provision that may be found, in one form or another, in many arbitration agreements. *See Stolt-Nielsen*, 130 S. Ct. at 1765 (arbitration agreement provided: "[a]ny dispute arising from the making, performance or termination of this Charter Party shall be settled [by arbitration]"); *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 116 (2d Cir. 2011) (arbitration agreement provided: "I hereby utilize the Sterling

---

[12] The parties do not provide any such "default rule" under federal or Texas law, nor are we aware of such a rule. The Texas General Arbitration Act makes no reference to class arbitration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.001 *et seq.* The FAA also has no such default rule.

RESOLVE [arbitration] program to pursue any dispute, claim, or controversy . . . against Sterling"); *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (explaining that "any dispute" clauses are very broad, and collecting cases involving such clauses); *see also* American Arbitration Association, Drafting Dispute Resolution Clauses: A Practical Guide 7 (Sept. 1, 2007) (suggesting following clause: "[a]ny controversy or claim arising out of or relating to this contract . . . shall be settled by arbitration"); JAMS ADR Clauses, *available at* www.jamsadr.com/clauses/#Standard (suggesting the following clause: "[a]ny dispute, claim or controversy arising out of or related to this Agreement . . . shall be determined by arbitration . . . ."). On its face, the "any dispute" clause merely reflects an agreement between the parties to arbitrate their disputes. *Stolt-Nielsen* makes clear, however, that an "implicit agreement to authorize class-arbitration . . . is *not* a term that the arbitrator may infer solely from *the fact of the parties' agreement to arbitrate*." 130 S. Ct. at 1775 (emphasis added). This clause is therefore not a valid contractual basis upon which to conclude that the parties agreed to submit to class arbitration. *See, e.g.*, Christopher R. Drahozal & Peter B. Rutledge, *Contract and Procedure*, 94 MARQ. L. REV. 1103, 1155 (2011) (arguing that a class arbitration award based upon an "any dispute" clause would be "insufficient" under *Stolt-Nielsen*, and stating that "[a] general arbitration clause, according to the *Stolt-Nielsen* Court, does not authorize class arbitration because class arbitration differs too much from individual arbitration").

Second, the arbitrator's reliance upon the "any remedy" clause was also improper. The "any remedy" clause, which merely allows the arbitrator to grant any "remedy available from a court under the law," says nothing whatsoever about class arbitration, and does not constitute an "agree[ment] to authorize class arbitration." *Stolt-Nielsen*, 130 S. Ct. at 1776 (emphasis omitted). A "remedy" is "anything a court can do for a litigant who has been wronged or is

about to be wronged." BLACK'S LAW DICTIONARY 1320 (8th ed. 2004); *see also Knapp, Stout & Co. v. McCaffrey*, 177 U.S. 638, 644 (1900) ("A remedy is defined . . . as the means employed to enforce a right, or redress an injury.") (internal quotation marks omitted). Remedies may include, for example, equitable relief such as an injunction or restitution, or legal relief such as monetary damages. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993). In contrast, we have characterized a class action as "a procedural device." *Blaz v. Belfer*, 368 F.3d 501, 505 (5th Cir. 2004); *see also Sw. Refining Co. v. Bernal*, 22 S.W.3d 425, 437 (Tex. 2000) ("The class action [under Texas Rule of Civil Procedure 42] is a procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment."). Thus, while a class action may lead to certain types of remedies or relief, a class action is not *itself* a remedy. *See Jock*, 646 F.3d at 132 (Winter, J., dissenting) ("My colleagues also rely upon the provision in the present agreement that the arbitrator may award any legal or equitable relief generally available in courts. Clearly, this provision refers only to relief in the form of an award based on a violation of law or contract —damages, injunctions, etc.—and not to the availability of procedures used to pursue such relief. A class can be certified and yet not get 'relief,' i.e. it may lose.").

The arbitrator concluded that class arbitration was a potential remedy here because Section 132.121(a) of the Texas Education Code allows for class action lawsuits to address violations of the Code. Even aside from the fact that a class action cannot properly be considered a "remedy" under state or federal law, Section 132.121(a) addresses only class action litigation in state court, and does not support the conclusion that the parties agreed to class arbitration. Indeed, the central purpose of the arbitration agreement is to *avoid* such provisions of state law, not to incorporate them into the arbitration agreement. In other words, the mere fact that the parties would otherwise be subject to class

No. 11-50509

action in the absence of an arbitration agreement is not a sufficient basis to conclude that they agreed to class arbitration when they entered into an arbitration agreement. Nor can the Texas Education Code class action provision be considered "a 'default rule' under which an arbitration clause is construed as allowing class arbitration in the absence of express consent." *Stolt-Nielsen*, 130 S. Ct. at 1768-69.

Finally, the arbitrator erroneously based his conclusion on the agreement's silence with respect to class arbitration. The arbitrator suggested that the School, as the drafter of the agreement, had an obligation to affirmatively state that the agreement precluded class arbitration. This rationale, however, is directly contrary to *Stolt-Nielsen*'s holding that arbitrators should not "presume, consistent with their limited powers under the FAA, that the parties' mere silence . . . constitutes consent" to class arbitration. *Id.* at 1776. *Stolt-Nielsen* requires that the parties "agree[] to authorize" class arbitration, not merely that they fail to bar such a proceeding. *Id.* (emphasis omitted).

We conclude, therefore, that the arbitrator lacked a contractual basis upon which to conclude that the parties agreed to authorize class arbitration. At most, the agreement in this case could support a finding that the parties did not preclude class arbitration, but under *Stolt-Nielsen* this is not enough. The arbitrator therefore exceeded his authority in ordering the parties to submit to a class arbitration proceeding, and the district court should have vacated the award. 9 U.S.C. § 10(a)(4); *see Stolt-Nielsen*, 130 S. Ct. at 1776.

The Second Circuit, applying *Stolt-Nielsen*, has come to a different conclusion.[13] In *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113 (2d Cir. 2011), *cert.*

---

[13] The Third Circuit has also recently addressed this issue. *See Sutter v. Oxford Health Plans LLC*, 675 F.3d 215 (3d Cir. 2012). Like the Second Circuit, the Third Circuit in *Sutter* confirmed an arbitrator's class arbitration award, finding it consistent with *Stolt-Nielsen*. *Id.* at 223-25. We disagree with *Sutter* for essentially the reasons stated herein with respect to the Second Circuit's *Jock* decision.

*denied* Mar. 19, 2012, a group of female employees filed both a class action lawsuit and a class arbitration complaint, alleging that their employer, Sterling Jewelers, engaged in gender discrimination. *Id.* at 115-16. The district court referred the class action lawsuit to arbitration and the parties submitted to the arbitrator the question of whether their agreement permitted class arbitration. *Id.* at 116. The arbitrator found that the agreement permitted class arbitration because it "cannot be construed to prohibit class arbitration," and there was "no mention of class claims." *Id.* at 117. The arbitrator interpreted the agreement under applicable state law, and "construed the absence of an express prohibition on class claims against the contract's drafter, Sterling." *Id.* The arbitrator also reasoned that Sterling had declined to revise the contract "despite several arbitral decisions permitting class claims in the absence of an express prohibition." *Id.* The district court denied Sterling's motion to vacate the award, and Sterling appealed. In the interim, the Supreme Court issued *Stolt-Nielsen*, and Jock moved the district court for relief from its order. The district court then vacated the award based upon *Stolt-Nielsen*. The plaintiffs appealed. *Id.* at 118.

On appeal, a panel of the Second Circuit, with one judge dissenting, reversed the district court's order and remanded with instructions to confirm the award. The majority explained that the district court erroneously "focused . . . on whether the arbitrator had correctly interpreted the arbitration agreement itself." *Id.* at 123. Instead, it should have restricted its analysis to whether the parties had submitted the class arbitration issue to the arbitrator and "whether the agreement or the law categorically prohibited the arbitrator from reaching that issue." *Id.* at 123.

The majority distinguished the case before it from the stipulation of silence in *Stolt-Nielsen*, explaining "[t]he plaintiffs' concession that there was no explicit agreement to permit class arbitration . . . is not the same thing as stipulating

No. 11-50509

that the parties had reached no agreement on the issue." *Id.* The district court erred when it substituted its own judgment for the arbitator's in deciding whether the record demonstrated an implicit class arbitration agreement. *Id.* at 124. The majority reasoned that, because the class arbitration issue was submitted to the arbitrator, and neither the law nor the agreement barred the arbitrator from deciding the issue, the arbitrator did not exceed her powers in resolving the issue. *Id.*

In so holding, the majority "reemphasiz[ed] that the primary thrust of [its] decision is whether the district court applied the appropriate level of deference when reviewing the arbitration award." *Id.* The majority criticized the dissent for focusing on the "correct" interpretation of *Stolt-Nielsen* rather than whether the arbitrator exceeded her powers. *Id.* at 125. Ultimately, the majority concluded, regardless of "whether the arbitrator was right or wrong in her analysis, she had the authority to make the decision, and the parties to the arbitration agreement are bound by it." *Id.* at 127 (footnote omitted).

Judge Winter dissented. He first noted that the same "silence" at issue in *Stolt-Nielsen* was present in *Jock*, as neither party claimed that the arbitration clauses at issue either "specifically authorize[d] or specifically preclude[d] class arbitration." *Id.* at 128 (Winter, J., dissenting). He acknowledged that an implicit agreement to arbitrate is permissible under *Stolt-Nielsen*, but argued that an implicit agreement cannot be inferred from an arbitration agreement's silence or failure to preclude class arbitrations, "much less from thin air." *Id.* at 129. Nowhere in the arbitrator's opinion, Judge Winter reasoned, did the arbitrator "purport to identify any provision of the agreement supporting the existence of an implied agreement"; in fact, many provisions of the agreement supported the conclusion that only bilateral arbitration was permissible. *Id.* In this regard, Judge Winter discounted the arbitrator's reliance on the "any relief" provision of the arbitration agreements, concluding that it could not support an

24

implicit agreement to submit to class arbitration, as class arbitration is a "procedure[] used to pursue . . . relief," not relief itself. *Id.* at 132. Finally, Judge Winter rejected the majority's reliance on the deferential standard of review, noting that the same standard of review was applicable in *Stolt-Nielsen*, but it did not prevent the Court from vacating the award. *Id.* at 133.

We respectfully disagree with the Second Circuit's decision in *Jock*. We read *Stolt-Nielsen* as requiring courts to ensure that an arbitrator has a legal basis for his class arbitration determination, even while applying the appropriately deferential standard of review. 130 S. Ct. at 1775. Such an analysis necessarily requires some consideration of the arbitrator's award and rationale. Instead of examining the arbitrator's award, the *Jock* majority confirmed the award even though the award based its conclusion in part upon the agreement's failure to expressly prohibit class arbitration, a rationale that is incompatible with *Stolt-Nielsen*.[14] To the extent that the Second Circuit decided not to undertake an inquiry into the arbitrator's reasoning, we must part ways.

Nor can we agree that the deferential standard of review applicable to arbitration awards precludes such an inquiry. Indeed, the same standard of review was at issue in *Stolt-Nielsen*, but it did not prevent the Court from examining and vacating the arbitrator's award. Furthermore, we are persuaded by the Supreme Court's lengthy discussion of the significant disadvantages of class arbitration, *id.* at 1776, a discussion that the *Jock* majority largely

---

[14] We note that the arbitral award in *Jock* was issued before the Supreme Court's *Stolt-Nielsen* decision. This led the *Jock* majority to explain that the "arbitrator faithfully followed the law as it existed at the time of her decision," and an "intervening change of law, standing alone, [does not] provide[] grounds for vacating an otherwise proper arbitral award." 646 F.3d at 125. It is not clear, however, whether the court would have reached the same result if the arbitrator's award had been issued after *Stolt-Nielsen*.

ignored.[15]    Together, *Stolt-Nielsen* and *Concepcion* indicate that arbitrators should not find implied agreements to submit to class arbitration, and courts should not confirm arbitral awards that order parties into such a proceeding, without a contractual or legal basis for doing so. While we cannot substitute our own judgment for that of an arbitrator, we also cannot confirm an award that Supreme Court precedent requires us to vacate.

To summarize, we conclude that the arbitrator in this case exceeded his powers by ordering the parties to submit to class arbitration without a contractual or legal basis.  The district court thus erred in denying the School's motion to vacate the award.  9 U.S.C. § 10(a)(4); *see Stolt-Nielsen*, 130 S. Ct. at 1775-76.  Pursuant to Section 10(b) of the FAA, we must either "'direct a rehearing by the arbitrators' or decide the question that was originally referred to the panel."    *Stolt-Nielsen*, 130 S. Ct. at 1770 (internal quotation marks omitted).  Because we conclude, as did the *Stolt-Nielsen* Court, that "there can be only one possible outcome on the facts before us," there is no need to direct a rehearing by the arbitrator.  *Id.*  This arbitration must proceed bilaterally.

### III. CONCLUSION

For the reasons stated above, we REVERSE the order of the district court and REMAND this case with instructions to refer the parties to bilateral arbitration.

---

[15] Only the dissent in *Jock* discussed at length the Supreme Court's recent concerns about class arbitration. 646 F.3d at 131 (Winter, J., dissenting).

No. 11-50509

DENNIS, Circuit Judge, specially concurring:

I join the majority's opinion, except Part II.1, and write separately to add some observations regarding *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010), which might prove to be crucial in future cases.

**1.**

I agree with the majority's conclusion in Part II.1 of its opinion that the district court did not err in referring the issue of class arbitration *vel non* to the arbitrator, but I am not persuaded that "the parties' agreement to the AAA's Commercial Rules also constitutes consent to the Supplementary Rules." Majority Op. 8. Instead, I believe that reference of the question to the arbitrator is required by our circuit precedent in *Pedcor Management Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.*, 343 F.3d 355 (5th Cir. 2003), which held that, "pursuant to *Green Tree* [*Financial Corp. v. Bazzle*, 539 U.S. 444 (2003)], arbitrators should decide whether class arbitration is available or forbidden." *Pedcor*, 343 F.3d at 363.

In *Pedcor*, this court considered the upshot of the splintered decision in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003). In *Green Tree*, Justice Breyer wrote a plurality opinion, joined by Justices Scalia, Souter, and Ginsburg, which concluded that the arbitrator, not the court, should decide the class arbitration question. *Id.* at 453.[1] Justice Stevens cast the fifth vote for the judgment to vacate and remand the state court's decision; but he did not join Justice Breyer's opinion. *Id.* at 454-55 (Stevens, J., concurring in the judgment and dissenting in part). Justice Stevens noted that "[a]rguably the interpretation of the parties' agreement [to permit class arbitration or not]

---

[1] Chief Justice Rehnquist, joined by Justices O'Connor and Kennedy, dissented on the grounds that "this determination is one for the courts, not for the arbitrator," *Green Tree*, 539 U.S. at 455 (Rehnquist, C.J., dissenting); and Justice Thomas dissented separately on the basis that he "believe[d] that the [FAA] does not apply to proceedings in state courts," 539 U.S. at 460 (Thomas, J., dissenting).

should have been made in the first instance by the arbitrator, rather than the court." *Id.* at 455. However, because Justice Stevens believed that the state court's "decision to conduct a class-action arbitration was correct as a matter of law, and because petitioner has merely challenged the merits of that decision without claiming that it was made by the wrong decisionmaker," he did not think that remanding the case was necessary. *Id.* Nonetheless, Justice Stevens concurred in the plurality's judgment "[i]n order to avoid [there being no controlling judgment of the Court], and because Justice BREYER's opinion expresses a view of the case close to my own." *Id.*

In analyzing *Green Tree*, the *Pedcor* panel applied the well-established principle that "when we are confronted with a plurality opinion, we look to that position taken by those Members who concurred in the judgments on the narrowest grounds." 343 F.3d at 358 (internal quotation marks omitted). The panel reasoned that Justice Stevens' opinion "fails to constitute the most narrow grounds on which the case was decided." *Id.* at 358. Instead, the *Pedcor* panel concluded that the narrowest grounds for the *Green Tree* judgment were those expressed by Justice Breyer's plurality opinion. *Id.* at 358-59. Thus, the panel held that "pursuant to *Green Tree*, arbitrators should decide whether class arbitration is available or forbidden." *Id.* at 363. Although the *Pedcor* panel indicated that Justice Stevens might have tacitly agreed with the plurality on this point, *see* 343 F.3d at 358-59, that view was not necessary to or part of the *Pedcor* panel's holding.

In *Stolt-Nielsen*, the Court recognized that Justice Stevens' opinion in *Green Tree* did not decide the question of whether the arbitrator or the court should decide the class arbitration question, and "[t]hus, [*Green Tree*] did not yield a majority decision on" that issue. 130 S. Ct. at 1771-72. However, the *Stolt-Nielsen* Court explicitly declined to address this issue: "[W]e need not revisit that question here because the parties' supplemental agreement

No. 11-50509

expressly assigned this issue to the arbitration panel, and no party argues that this assignment was impermissible." *Id.* Thus, *Stolt-Nielsen* does not alter the status of the *Green Tree* plurality opinion, and does not affect our holding in *Pedcor* that the *Green Tree* plurality provided the narrowest grounds for the judgment in that case. Accordingly, in my view we are still bound to follow our precedent in *Pedcor*. *See Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001) ("[T]he Supreme Court decision must be more than merely illuminating with respect to the case before us, because a panel of this court can only overrule a prior panel decision if 'such overruling is unequivocally directed by controlling Supreme Court precedent.'" (quoting *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1306 (5th Cir. 1991)). Similarly, the Seventh Circuit recently concluded that *Stolt-Nielsen* did not upset that court's post-*Green Tree* holding in *Employers Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573 (7th Cir. 2006), that the arbitrator should decide whether an arbitration agreement allows for class arbitration. *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 639 (7th Cir. 2011) (Easterbrook, C.J.) ("*Stolt–Nielsen* did not [address whether an arbitrator should decide the class arbitration question]. This leaves in place our post-[*Green Tree*] decision in *Wausau*.").[2]

Therefore, I would follow *Pedcor* to uphold the district court's referral of the class arbitration question to the arbitrator.

---

[2] *See also Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 232 (3d Cir. 2012) ("Silence regarding class arbitration generally indicates a prohibition against class arbitration, but the actual determination as to whether class action is prohibited is a question of interpretation and procedure for the arbitrator." (citing *Stolt-Nielsen*, 130 S. Ct. at 1775)); *Vilches v. The Travelers Companies, Inc.*, 413 F. App'x 487, 492 (3d Cir. 2011) (unpublished) (following *Green Tree* plurality and *Stolt-Nielsen* in holding, "[w]here contractual silence is implicated, 'the arbitrator and not a court should decide whether a contract[ was] indeed silent on the issue of class arbitration,' and 'whether a contract with an arbitration clause forbids class arbitration.'" (alteration in original) (quoting *Stolt-Nielsen*, 130 S. Ct. at 1771-72) (internal quotation mark omitted)).

No. 11-50509

**2.**

I agree with the majority that under the principles of *Stolt–Nielsen* that are clearly applicable to this case, we must reverse the district court's affirmance of the arbitrator's class arbitration award and remand the case with instructions to refer the parties to bilateral arbitration. However, a careful reading and assessment of *Stolt-Nielsen* reveals that it is distinguishable from the present case in respects that may be significant in future cases.

First, as the majority notes, Majority Op. 11, *Stolt-Nielsen* fully reaffirmed the exceedingly deferential standard that federal courts must apply when reviewing arbitration decisions. Indeed, the Court began its analysis in *Stolt-Nielsen* by restating this deference in no uncertain terms: "Petitioners contend that the decision of the arbitration panel must be vacated, but in order to obtain that relief, they must clear a high hurdle." 130 S. Ct. at 1767. The Court explained this exceptionally narrow standard of judicial review of arbitral decisions: "It is not enough for petitioners to show that the [arbitration] panel committed an error—or even a serious error." *Id.* (citing *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000); *United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). Instead, the Court stated, "[i]t is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable.'" *Id.* (alterations in original) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam), in turn quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)); *see also United Paperworkers*, 484 U.S. at 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."); *United Steelworkers*, 363 U.S. at 597 (an arbitration award must be upheld "so long as it draws its essence"

from the agreement).  Thus, *Stolt-Nielsen* reaffirmed the Court's longstanding precedent that courts must review arbitration decisions with the utmost deference.

The Court's decision to vacate the arbitrator's class arbitration decision in *Stolt-Nielsen* did not alter this exceptionally deferential standard of review. There, the Court, in deciding that the arbitration panel had exceeded its power, relied upon and repeatedly called attention to the fact that the parties had expressly stipulated that they had reached no agreement on the issue of class arbitration.  130 S. Ct. at 1768 ("[T]he parties agreed their agreement was 'silent' in the sense that they had not reached any agreement on the issue of class arbitration."); *id.* at 1766 ("The parties . . . stipulated that the arbitration clause was 'silent' with respect to class arbitration.  Counsel for [the Respondent] explained to the arbitration panel that the term 'silent' did not simply mean that the clause made no express reference to class arbitration.  Rather, he said, '[a]ll the parties agree that when a contract is silent on an issue there's been no agreement that has been reached on the issue.'").  Thus, "the [arbitration] panel had no occasion to ascertain the parties' intention" regarding class arbitration "because [their stipulation stated that] the parties were in complete agreement regarding their intent."  *Id.* at 1770 (internal quotation marks omitted) ("Th[eir] stipulation left no room for an inquiry regarding the parties' intent, and any inquiry into that settled question would have been outside the panel's assigned task.").  The Court did not need to undertake a deferential review of the arbitration contract or the arbitration panel's class arbitration decision; but instead, merely "held that [the] arbitration panel exceeded its power under the FAA by imposing class arbitration procedures based on policy judgments rather than the arbitration agreement itself or some background principle of contract law."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1750 (2011) (citing *Stolt-Nielsen*, 130 S. Ct. at 1773-76).  Thus, the Court did not alter the usual,

No. 11-50509

exceedingly deferential standard of judicial review that courts must apply to arbitrators' contract interpretations based on the parties' written agreement itself or on some background principle of contracts law.

Second, *Stolt-Nielsen* does not require that there be an express agreement to class arbitration in order for arbitrators, within their powers, to find that the parties agreed to class arbitration. *See Stolt-Nielsen*, 130 S. Ct. at 1775 ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."); *id.* at 1776 n.10 ("We have no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration."); *see also id.* at 1783 (Ginsburg, J., dissenting) ("[T]he Court does not insist on express consent to class arbitration."). There simply is no basis for the arbitrator to find such an implicit agreement to class arbitration in the present case; however, there may be such a basis in the parties' agreements in other cases.

Third, *Stolt-Nielsen* did not address a case in which a party is unsophisticated and the arbitration agreement is part of a contract of adhesion;[3] and in which "adjudication is costly and individual claims are no more than modest in size, [in which case,] without [class proceedings], potential claimants will have little, if any, incentive to seek vindication of their rights." *See id.* at 1783 (Ginsburg, J., dissenting) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)); *see also id.* ("'The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.'" (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004))). In other cases, the Court has "recognized [arbitration] as an

---

[3] In *Stolt-Nielsen* the arbitration agreement was between "sophisticated business entities," where the form of the agreement was selected by the entity seeking class arbitration, and high-stakes, international antitrust claims were involved. 130 S. Ct. at 1775; *id.* at 1764-65; Joint Appendix at 73a, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010) (No. 08-1198), 2009 WL 2777896.

effective vehicle for vindicating statutory rights, but only 'so long as the prospective litigant may effectively vindicate its statutory cause of action in the arbitral forum.'" *In re Am. Express Merchants' Litig.*, 667 F.3d 204, 214 (2d Cir. 2012) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 636-37 (1985)).  That is, the Court has "noted that should clauses in a contract operate 'as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy.'" *In re Am. Express Merchants' Litig.*, 667 F.3d at 214 (quoting *Mitsubishi*, 473 U.S. at 637 n.19).  Such considerations led the Second Circuit recently to conclude that a class arbitration waiver provision was unenforceable, and that *Stolt-Nielsen* does not hold otherwise. *Id.* at 216-19.[4]  Although the instant case involves an adhesive consumer contract, the stakes—roughly $51,000 in student loan debt—are high enough that we may not be justified in determining that "potential claimants," such as Reed, "will have little, if any, incentive to seek vindication of their rights." *Stolt-Nielsen*, 130 S. Ct. at 1783 (Ginsburg, J., dissenting).  However, in different kinds of future cases, courts may need to consider whether an arbitrator can properly find an implicit agreement to class arbitration procedures because bilateral arbitration would otherwise offer claimants to modest amounts no practicable or realistic remedy.

---

Subject to my disagreement with the majority's reasoning in Part II.1, and with the foregoing observations on the Court's decision in *Stolt-Nielsen*, I concur in the remainder of the majority opinion.

---

[4] *Cf. Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1215 (11th Cir. 2011) (noting "the possibility that in some cases, an arbitration agreement may be invalidated on public policy grounds where it effectively prevents the claimant from vindicating her statutory cause of action" because of a class arbitration waiver (citing *Mitsubishi*, 473 U.S. at 637)).